## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**ISRAEL GARZA, LARRIE GURULE, AND HEATHER BUSTOS,** individually and on behalf of similarly situated persons,

Plaintiffs,

v.

**Ayvaz Pizza, LLC,**

Defendant.

**Case No. 4:23-cv-01379**

**Amended Class/Collective Action Complaint**

**Jury Demanded**

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO DISMISS PLAINITIFFS' AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Plaintiffs, ISRAEL GARZA, LARRIE GURULE, AND HEATHER BUSTOS (collectively referred to as "Plaintiffs"), on behalf of themselves and those similarly situated, hereby file this Response in Opposition to Defendant's Motion to Compel Arbitration and to Dismiss Plaintiffs' Amended Complaint [D.E. 30] and state as follows:

## BACKGROUND AND SUMMARY OF ARGUMENT

Plaintiffs filed this action on April 12, 2023, under the Fair Labor Standards Act, 29 U.S.C. § 201, et al. ("FLSA") and New Mexico Minimum Wage Act, NMSA 1978 §§ 50–4–19 to –30 ("NMMWA"), seeking the recovery of unpaid minimum wages for themselves and all other putative class members who were deprived of proper minimum wages during the relevant time period. [D.E. 1]. Plaintiffs filed an

1

Amended Complaint on June 29, 2023, which is the operative complaint in this matter. [D.E. 19]. Plaintiffs' complaint alleges that Defendant, Ayvaz Pizza, LLC ("Ayvaz") violated the law by failing to properly reimburse its delivery drivers for all vehicular expenses incurred on Ayvaz's behalf. *See id.*, generally.

In response to Plaintiffs' Amended Complaint, Defendant filed a Motion to Compel Arbitration and to Dismiss Plaintiffs' Amended Complaint [D.E. 30] ("Motion to Compel" or "Motion"), arguing that Plaintiffs each executed an Arbitration Agreement that requires them to arbitrate this dispute. Defendant's Motion to Compel must be denied, in part, because Plaintiff Heather Bustos' arbitration agreement is not enforceable by Ayvaz.[1]

Bustos previously worked as a delivery driver for Muy Pizza-Tejas, LLC ("MUY"). [D.E. 30-5, at 2]. During her employment with MUY, Bustos entered into an Arbitration Agreement with MUY that provided the following:

> Because of the inconvenience, delay and expense of litigation, **MUY Companies on behalf of itself and its affiliated companies, officers, directors, and managers** (hereinafter, MUY) and I agree to use confidential binding arbitration, instead of going to court, for any disputes or claims involving pay/wages, overtime, or other form of compensations, arising under the Fair Labor Standard Act or any similar state or federal laws concerns wages, pay, overtime, or other compensation, including any claims now in existence or that may exist in the future **(a) that I may have against MUY, its affiliates, and/or their *current or former* officers, directors or managers or (b) that MUY and/or its affiliates may have against me.**

---

[1] Plaintiffs do not contest Defendant's Motion to Compel Arbitration as to Plaintiffs Garza and Gurule.

[D.E. 30-4, at 1] (emphasis added). By the plain language of the Arbitration Agreement, Ayvaz is not a party to the Agreement.

In its Motion to Compel, Ayvaz submitted that in May 2021 it entered into a transaction to purchase all the assets and liabilities of MUY. [D.E. 30-5, at ¶ 3]. Ayvaz further submitted that after the transaction was consummated, Ayvaz "assumed" possession of the former MUY employees' employment files, including any arbitration agreements those employees had with the predecessor company MUY. *Id.* at ¶ 5. Ayvaz argues the Arbitration Agreement Bustos signed with MUY is enforceable here to arbitrate disputes with Ayvaz, despite Ayvaz not being a signatory to the agreement, based on the doctrine of assumption. [D.E. 30, at 14-17]. This argument fails on numerous grounds.

First, the Arbitration Agreement is not assignable and/or Ayvaz is not a permissible assignee. Based on the plain language of the Arbitration Agreement it is not assignable to Ayvaz because it limited the parties bound to only Bustos, MUY, "affiliated companies," and ""*current or former* officers, directors or managers" of Muy (emphasis added) which clearly implies that the parties did not intend for this Agreement to be assignable to successor entities.

Second, even if the Arbitration Agreement can be freely assigned to successor entities (which it clearly cannot based on the plain language of the agreement), from an evidentiary standpoint, Ayvaz has failed to prove that it is an assignee of the Agreement. The only evidence Ayvaz submitted of assignment/assumption of the Arbitration Agreement is a declaration executed by Ayvaz's Chief People Officer,

Sonya Bly, that is replete with conclusory allegations. [D.E. 30-5]. For example, Ms. Bley states: "In May of 2021, Ayvaz Pizza entered into a transaction to purchase all the <u>assets and liabilities</u> of predecessor company Muy." *Id.* at ¶ 3 (emphasis added). She further states: "In addition, after the transaction was consummated, Ayvaz Pizza <u>assumed possession</u> of the former MUY employees' employment files, including any arbitration agreements those employees had with the predecessor company MUY." *Id.* at ¶ 5 (emphasis added). Finally, she states: "Heather Bustos became an employee of Ayvaz Pizza, and her employment file, including her arbitration agreement, was <u>transferred to the possession of Ayvaz Pizza</u> by virtue of the transaction." *Id.* at ¶ 7 (emphasis added). Ayvaz did not provide a copy of the purchase of the agreement so the validity of these facts cannot be verified. More troublesome, however, is that <u>none of these conclusory statements</u> prove that Muy assigned Ayvaz the Arbitration Agreement at issue here.

Additionally, for argument's sake, assuming the Agreement is assignable to successor entities and that Ayvaz has proved that it is an assignee of the Agreement, Ayvaz still cannot compel arbitration of this claim because this claim is not covered by the Agreement. The Arbitration Agreement only covers claims against Muy <u>and violations that occurred during Bustos' employment with Muy.</u> Because this case does not involve claims against MUY or violations that occurred during Bustos' employment with MUY, Ayvaz cannot enforce arbitration here <u>even if it a proper assignee of the Agreement</u>. Ayvaz would only be "standing in MUY's shoes" by

asserting arbitration [D.E. 30, at 15] if Bustos brought this claim against MUY.[2] Because she did not, this Court cannot compel Bustos to arbitrate her dispute with Ayvaz.

## **MEMORANDUM OF LAW**

### I.    **Legal Standard**

"Under the [Federal Arbitration Act ("FAA")], ordinary principles of state contract law determine whether there is a valid agreement to arbitrate. Because arbitration is contractual in nature, the FAA generally does not require parties to arbitrate when they have not agreed to do so." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005) (citations omitted). Just last year, in *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022), the Supreme Court affirmed that arbitration agreements are no more enforceable than any other contract:

> But the FAA's "policy favoring arbitration" does not authorize federal courts to invent special, arbitration-preferring procedural rules. *Moses H. Cone*, 460 U. S., at 24. Our frequent use of that phrase connotes something different. "Th[e] policy," we have explained, "is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Granite Rock Co. v. Teamsters*, 561 U. S. 287, 302 (2010) (internal quotation marks omitted). Or in another formulation: The policy is to make "arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U. S. 395, 404, n. 12 (1967). Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation. *See Dean Witter Reynolds Inc. v. Byrd,* 470 U. S. 213, 218–221 (1985)…The federal policy is about treating arbitration contracts like all others, not about fostering arbitration. *See ibid.; National Foundation for Cancer Research v. A. G. Edwards & Sons, Inc.*, 821 F. 2d 772, 774 (CADC 1987) ("The Supreme Court has made clear" that the FAA's policy

---

[2] Even if this claim was against MUY or involved violations MUY committed, assumption may not apply for other reasons; but since those facts are not present here, Plaintiff need not address whether assumption would apply in that scenario.

"is based upon the enforcement of contract, rather than a preference for arbitration as an alternative dispute resolution mechanism").

*Id.* at *1713-14.

"Enforcement of an arbitration agreement involves two analytical steps. The first is contract formation—whether the parties entered into *any arbitration agreement at all*. The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement. Ordinarily both steps are questions for the court." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (citing *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)) (emphasis in original).

## II.   <u>Bustos' Arbitration Agreement is Not Enforceable Here</u>

### A.   *Ayvaz is Not a Party to the Arbitration Agreement by Reference or Assignment*

The first step in determining who is bound to an arbitration agreement is to look at the terms of the agreement. *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 399 (5th Cir. 2022). Here, the Arbitration Agreement specifies that the parties bound to the Agreement are "MUY Companies on behalf of itself and its affiliated companies, officers, directors, and managers" and Bustos. [D.E. 30-4, at 1]. The plain language of the Agreement does not include Ayvaz or MUY's successors and/or assigns. Case law agrees. For example, in *Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830 (Tex. App. 2002), the court denied a Motion to Compel Arbitration filed by a corporate successor in interest where the arbitration agreement defined "Employer," one of the signatory parties, as a "parent company, subsidiary company, [or] affiliate company." *Id.* At 837, n. 12. The successor could not enforce arbitration

6

because they were not a signatory to the agreement, nor did they come within the definition of "Employer" since that term did not include successor entities. *Id.* This comports with Texas law which requires the written terms of a contract not be rewritten or ignored. *See Sundown Energy LP v. HJSA No. 3, Ltd. P'ship*, 622 S.W.3d 884, 888 (Tex. 2021) ("Courts cannot interpret a contract to ignore clearly defined terms." (cleaned up). Texas has "long held that courts will not rewrite agreements to insert provisions parties could have included or to imply restraints for which they have not bargained." *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996). "Parties make their own contracts, and it is not within the province of this court to vary their terms in order to protect them from the consequences of their own oversights and failures in nonobservance of obligations assumed." *Provident Fire Ins. Co. v. Ashy*, 139 Tex. 334, 162 S.W.2d 684, 687 (1942). Here, Ayvaz has presented no evidence that it is an affiliated company, officer, director, or manager of MUY; it only argues that it is a corporate successor in interest, just as Auto Nation did in *Mohamed. See supra.* Because the plain language of the contract here does not define successors and/or assigns as a party to the contract, this argument must be rejected.

Additionally, the Arbitration Agreement limited the parties bound to only MUY and "their <u>*current or former*</u> officers, directors or managers." Importantly, that clause also does not include *future* officers, directors, or managers, signaling that the plain language of the Agreement did not include future assigns. When a contract contains language restricting assignability, the presumption of free assignability does not apply. *54 Broad., Inc. v. Lin Television of Texas, L.P.*, 2008 WL 7836303, at *5

(W.D. Tex. Dec. 3, 2008). Even an implied prohibition against assignment in the language of a contract, therefore, may defeat the presumption of the right to assignability. *Id.* (citing 3–11 CORBIN ON CONTRACTS § 11.15 ("In nearly all jurisdictions the option holder's rights in an option . . . are assignable in the absence of *any words* of assignability[ ]. Thus, express words of assignability are now unimportant."); *Rollingwood Trust No. 10 v. Schuhmann,* 984 S.W.2d 312, 315 (Tex.App.-Austin 1998) ("In the absence of *a provision* to the contrary, an option to purchase . . . may be assigned by the optionee."); *Reo Motor Car Co. v. Goad Motor Co.,* 24 S.W.2d 67 (Tex.Civ.App.1930) (finding assignability "[w]here there was *no provision* in th[e] instrument which either expressly or impliedly prohibited its assignment.") (emphases added))). "These cases do not require an express provision of anti-assignability to override the presumption contracts are freely assignable; rather, they point to '*any words*' or 'a provision' which either expressly or implicitly prohibits assignment as the decisive factor." *Id.* (emphasis added). Here, by specifically excluding *future* officers, directors or managers from the definition of parties to be bound, the parties clearly indicated that the Arbitration Agreement was not freely assignable or meant to apply to someone or some thing different in the future. As such, Ayvaz is not a party to the Arbitration Agreement either explicitly or through assignment.

The Court's analysis should end here. But, for arguments sake, Plaintiff will address several other reasons why the Arbitration Agreement is not enforceable.

8

**B.**     *Ayvaz Has Not Proven it is an Assignee to the Arbitration Agreement*

For argument's sake, assuming the Arbitration Agreement can be freely assigned to successor entities (which it clearly cannot based on the plain language of the Agreement), from an evidentiary standpoint, Ayvaz has failed to prove that it is an assignee of the Agreement. "[A]n assignment is a contract 'between the assignor of a right and an assignee, who receives the authority to assert that right.'" *In re Wenstrom*, 649 B.R. 492, 500–01 (Bankr. N.D. Tex. 2023) (citing *Pagosa Oil & Gas, LLC. v. Marrs & Smith P'ship*, 323 S.W.3d 203, 211 (Tex. App.–El Paso 2010, pet. denied)). Like any other contract, "Texas law [ ] requires an alleged assignee of a contract to come forward with evidence of the assignment." *See In re DePugh*, 409 B.R. 125, 139 (Bankr. S.D. Tex. 2009) (citing *Skipper v. Chase Manhattan Bank USA, N.A.*, 2006 WL 668581, at *1 (Tex.App.-Beaumont, 2006, no. pet.hist.) (citing cases)). Therefore, Ayvaz has the burden of proving an assignment of the Arbitration Agreement by Muy to Ayvaz. *See id.*

In *In re DePugh*, the court held that "bald allegations" that certain credit card accounts were assigned was "woefully insufficient" to establish that the purported assignee was the current holder of the accounts. *Id.*  Likewise, here, the only evidence Ayvaz submitted of assignment/assumption of the Arbitration Agreement is a conclusory declaration executed by Ayvaz's Chief People Officer, Sonya Bly, that is replete with bald/conclusory allegations. [D.E. 30-5]. For example, Ms. Bley states: "In May of 2021, Ayvaz Pizza entered into a transaction to purchase all the <u>assets and liabilities</u> of predecessor company Muy." *Id.* at ¶ 3 (emphasis added). She further

states: "In addition, after the transaction was consummated, Ayvaz Pizza <u>assumed</u> <u>possession</u> of the former MUY employees' employment files, including any arbitration agreements those employees had with the predecessor company MUY." *Id.* at ¶ 5 (emphasis added). Finally, she states: "Heather Bustos became an employee of Ayvaz Pizza, and her employment file, including her arbitration agreement, was <u>transferred</u> <u>to the possession of Ayvaz Pizza</u> by virtue of the transaction." *Id.* at ¶ 7 (emphasis added). Ayvaz did not provide a copy of the purchase of the agreement, or even excerpts of that agreement, to support the validity of these allegations. At a minimum, this Court should not compel arbitration without requiring Ayvaz to produce a copy of the purported purchase agreement proving what was or was not purchased and what it included.

More importantly, however, is that <u>none of these conclusory statements</u> prove that Muy assigned Ayvaz the Arbitration Agreement. An Arbitration Agreement is not an "asset or liability." Moreover, because Bustos was an at-will employee Ayvaz was not under any obligation to retain Bustos as an employee when it purchased Muy. *See* Arbitration Agreement, D.E. 30-4. ("This Agreement to Arbitrate does not in any way alter the "at-will" status of employment with the Company"). Thus, when Ayvaz "assumed possession" of Bustos' employee file (Bly Decl., D.E. 30-5 at ¶ 5), it did so voluntarily, not out of obligation through assumption of Muy's liabilities and assets.[3] This argument is likewise fails.

---

[3] And from a commonsense standpoint, physical possession of a contract does not equate to legal assignment of that contract.

10

C.     *This Claim is not Covered by the Arbitration Agreement*

For argument's sake, assuming the Arbitration Agreement is assignable to successor entities and assuming Ayvaz proves it is an assignee of the Arbitration Agreement, arbitration is still unenforceable here because this claim against Ayvaz is not covered by the Agreement. "Like other contracts, arbitration agreements 'are enforced according to their terms and according to the intentions of the parties.'" *In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 210 (Tex. 2007) (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 947 (1995) (internal citation omitted)); *see also Gilbert Texas Const, L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010) ("[W]e presume parties intend what the words of their contract say"); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005) ("Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense"). As a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).

According to the plain language of Bustos' Arbitration Agreement, the only claims subject to arbitration are claims that Bustos has against MUY, its affiliates, and/or their current or former officers, directors or managers or that MUY and/or its affiliates has against her. [D.E. 30-4, at 1]. This case does not involve claims Bustos has against MUY, or MUY's violations of the FLSA. This case involves claims Bustos has against Ayvaz that occurred after Ayvaz purchased MUY.

11

This fact makes the cases applying the doctrine of assumption inapplicable. For example, in *QPro Inc. v. RTD Quality Servs. USA, Inc.*, 761 F. Supp. 2d 492, 497 (S.D. Tex. 2011), relied upon by Ayvaz, this court recognized that the doctrine of assumption allows a non-signatory to compel arbitration against a signatory where the non-signatory essentially <u>stands in the shoes of a signatory to the arbitration agreement when defending the suit</u>." *Id.* (emphasis added). This is not such a case. Here, Ayvaz is not standing in the shoes of MUY because this case does not involve MUY; it strictly involves minimum wage violations that occurred during Ayvaz's ownership. *C.f. Apollo Computer, Inc. v. Helge Berg*, 886 F.2d 469, 470-74 (1st Cir.1989) (cited by *Qpro Inc. v. RTD Quality Servs. USA, Inc.*) (applying the doctrine of assumption where the dispute at issue involved the contract containing the arbitration clause). Hence, if the doctrine of assumption applied (which it does not since the arbitration agreement is not intended to include successors in any way by its clear language) and if Ayvaz proved that it is an assignee of the Agreement, it would only cover Ayvaz's duty to arbitrate the claims subject to the Agreement (claims against MUY). The current, pending claim is not subject to the Agreement since it does not involve MUY, only Ayvaz, and thus the doctrine of assumption does not require Bustos to arbitrate her claim against Ayvaz.

To make Ayvaz a party to the Arbitration Agreement, or allowing claims that arose while Plaintiff Bustos worked for Ayvaz to be arbitrable, would be altering the express defined terms in the Arbitration Agreement, which Texas courts have universally held may not occur when interpreting contracts. *See supra* p. 7 (citing

*Sundown Energy LP*, 622 S.W.3d at 888; *Tenneco Inc.*, 925 S.W.2d at 646; *Provident Fire Ins. Co.*, 162 S.W.2d at 687 (1942).; *see also* Restatement (Second) of Contracts § 317 (1981), comment d. Material variation ("if the duty is to depend on the personal discretion of one person, substitution of the personal discretion of another is likely to be a material change"). Thus, regardless of assumption (which the Court should reject anyway per the above), the Court can only enforce the Arbitration Agreement as written, which only compels arbitration against MUY for claims arising during work with MUY, not Ayvaz or any claims which arose while working with Ayvaz.

## CONCLUSION

This Court must deny Defendant's Motion to Compel with respect to Bustos. Ayvaz has failed to meet its burden to prove that it is a party to the Arbitration Agreement and/or that this claim against Ayvaz is covered by the agreement. As such, Bustos cannot be compelled to arbitrate this claim against Ayvaz.

WHEREFORE, this Court should deny Defendant's Motion to Compel Arbitration and Dismiss Plaintiffs' Amended Complaint and Order Defendant to respond to Plaintiffs' Amended Complaint.

Dated this 7th day of September, 2023.

Respectfully submitted,

**/s/ C. RYAN MORGAN**
C. Ryan Morgan, Esq.
FBN 0015527
Jolie N. Pavlos, Esq.
FBN 0125571
Morgan & Morgan, P.A.
20 N. Orange Ave., 15th Floor

13

P.O. Box 4979
Orlando, FL 32802-4979
Telephone:    (407) 420-1414
Email:        RMorgan@forthepeople.com
              JPavlos@forthepeople.com

*Counsel for the Plaintiff(s)*

**/s/ ANDREW DUNLAP**
Andrew Dunlap, Esq.
Texas Bar No. 24078444
JOSEPHSON DUNLAP, LLP
11 Greenway Plaza
Suite 3050
Houston, TX 77046
Telephone: (713) 352-1100
E-mail: adunlap@mybackwages.com

*Local Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 7, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to: Joel W. Rice, Esq., *Pro Hac Vice* and Franklin Z. Wolf, Esq., *Pro Hac Vice*, FISHER & PHILLPS, LLP 10 South Wacker Drive, Suite 3450, Chicago, IL 60606, T: (312) 580-7810, E-mail: jrice@fisherphillips.com, fwolf@fisherphillips.com and Joseph W. Gagnon, Esq., FISHER & PHILLIPS, LLP 910 Louisiana St., Suite 4000, Houston, TX 77002 T: (713) 292-0150, E-mail: jgagnon@fisherphillips.com, *Attorneys for Defendant.*

**/s/ C. RYAN MORGAN**
C. Ryan Morgan, Esq.

14