United States District Court
Southern District of Texas
**ENTERED**
October 05, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ISRAEL GARZA, LARRIE GURULE, and HEATHER BUSTOS, Individually and on Behalf of Similarly Situated Persons, §§§§§§§§§§§§§ | |
| Plaintiffs, | |
| v. | CIVIL ACTION NO. H-23-1379 |
| AYVAZ PIZZA, LLC, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Israel Garza, Larrie Gurule, and Heather Bustos (collectively, "Plaintiffs") allege that Ayvaz Pizza, LLC ("Defendant") violated the Fair Labor Standards Act ("FLSA") by failing to correctly reimburse the costs of using their vehicles on the job.  Pending before the court is Defendant Ayvaz Pizza, LLC's Motion to Compel Arbitration and Dismiss Plaintiffs' Amended Complaint ("Defendant's Motion to Compel") (Docket Entry No. 30).  There is no dispute that Garza and Gurule signed arbitration agreements with Defendant that govern their claims and require individual arbitration.  Bustos signed an arbitration agreement with MUY Pizza-Tejas, LLC ("MUY") whose assets were bought by Defendant, and Defendant hired her with the same job duties.  The parties dispute whether the predecessor's arbitration agreement could be assigned to Defendant, whether it was assigned, and whether its scope is limited to claims arising

out of Bustos's employment for MUY. For the reasons explained below, Defendant's Motion to Compel will be granted as to Garza and Gurule and denied as to Bustos.

## I.   Factual and Procedural Background

Garza alleges that he "has been employed by Defendant, and previously its predecessor, in Texas, since approximately 2007 as a delivery driver."[1] Gurule alleges that he "has been employed by Defendant, and previously its predecessor, in New Mexico since approximately June 2019 as a delivery driver."[2] Both of them signed arbitration agreements with Defendant in October of 2022.[3] The court need not reproduce the agreements' language here because Garza and Gurule do not oppose arbitration.

Bustos began working for MUY in approximately March of 2021.[4] Bustos signed an Agreement to Arbitrate ("the MUY Agreement") with MUY. It states:

> MUY Companies on behalf of itself and its affiliated companies, officers, directors, and managers (hereinafter

---

[1] Amended Collective/Class Action Complaint ("Amended Complaint"), Docket Entry No. 19, p. 3 ¶ 8. For purposes of identification all page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing ("ECF") system.

[2] Id. ¶ 9.

[3] Mutual Agreement to Arbitrate, Exhibit A to Defendant's Motion to Compel, Docket Entry No. 30-1, p. 4; Mutual Agreement to Arbitrate, Exhibit B to Defendant's Motion to Compel, Docket Entry No. 30-2, p. 4.

[4] Amended Complaint, Docket Entry No. 19, p. 4 ¶ 10.

>MUY) and I agree to use confidential binding arbitration, instead of going to court, for any disputes or claims involving pay/wages, overtime, or other form of compensations, arising under the Fair Labor Standard Act or any similar state or federal laws concerns [sic] wages, pay, overtime, or other compensation, including any claims now in existence or that may exist in the future (a) that I may have against MUY, its affiliates, and/or their current or former officers, directors or managers or (b) that MUY and/or its affiliates may have against me.[5]

Defendant's Chief People Officer, Sonya Bly, describes Defendant's purchase of MUY's assets in May of 2021:

> 3. . . . [Defendant] entered into a transaction to purchase all the assets and liabilities of predecessor company MUY.
>
> 4. In connection with the consummation of that transaction, [Defendant] offered employment to, and retained, essentially all of the previous MUY employees and transitioned them to becoming [Defendant's] employees. The transition from MUY employees to [Defendant's] employees was seamless and nearly all of the employees retained their position, job responsibilities, and job locations with [Defendant] as they previously held with MUY Pizza. There were no changes to the terms or conditions of their employment, except that their new employer was now [Defendant].
>
> 5. In addition, after the transaction was consummated, [Defendant] . . . assumed possession of the former MUY employee files, including any arbitration agreements those employees had with the predecessor company MUY.[6]

---

[5]MUY Agreement, Exhibit D to Defendant's Motion to Compel, Docket Entry No. 30-4, p. 1.

[6]Declaration of Sonya Bly ("Bly Decl."), Exhibit C to Defendant Ayvaz Pizza, LLC's Reply to Plaintiffs' Response to Defendant's Motion to Compel Arbitration and Dismiss Plaintiffs' Amended Complaint ("Defendant's Reply"), Docket Entry No. 33-1, pp. 19-20 ¶¶ 3-5.

Defendant has not attached any documents evidencing its purchase of MUY. Defendant does attach an agreement with its own affiliated entity for administrative services related to transitioning former MUY employees hired by Defendant.[7]

Plaintiffs filed the Amended Complaint on June 29, 2023.[8] It alleges that Defendant violated the FLSA minimum wage protection by incorrectly reimbursing Plaintiffs' vehicle costs so that their real pay fell below minimum wage.[9] Defendant filed its Motion to Compel on August 17, 2023.[10] Defendant argues that Bustos signed a valid arbitration agreement with MUY and that Defendant obtained MUY's arbitration rights.[11] Bustos responded on September 7, 2023.[12] She argues that MUY could not assign its Agreement to Defendant, that MUY did not assign it, and that its scope is limited to claims arising out of her employment with MUY.[13] Defendant replied on

---

[7] UKG Order, Exhibit A to Defendant's Reply, Docket Entry No. 33-1, p. 2; Consulting Services Work Order Agreement, Docket Entry No. 33-1, p. 14.

[8] Amended Complaint, Docket Entry No. 19.

[9] Id. at 17 ¶¶ 59-60. Gurule also alleges violation of the New Mexico Minimum Wage Act. Id. at 19 ¶¶ 69-70.

[10] Defendant's Motion to Compel, Docket Entry No. 30.

[11] Id. at 8, 14.

[12] Plaintiffs' Response in Opposition to Defendant's Motion to Compel Arbitration and to Dismiss Plaintiffs' Amended Complaint and Incorporated Memorandum of Law ("Plaintiffs' Response"), Docket Entry No. 31.

[13] Id. at 3-4.

September 14, 2023, arguing that the MUY Agreement could be and was assigned and that it covers claims arising during Bustos's employment with Defendant.[14]

## II. Legal Standard

Section 2 of the Federal Arbitration Act provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 of the FAA requires federal courts, on a party's motion, to stay litigation of claims subject to arbitration. 9 U.S.C. § 3. Section 4 of the FAA permits a party to seek an order compelling arbitration if the other party has failed to arbitrate under a written agreement. 9 U.S.C. § 4. "[T]he party resisting arbitration bears the burden of showing that he is entitled to a jury trial under § 4 of the Arbitration Act." Gallagher v. Vokey, 860 F. App'x 354, 357 (5th Cir. 2021) (internal quotation marks omitted).

The Supreme Court has described § 2 of the FAA as "a congressional declaration of a liberal federal policy favoring arbitration agreements." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 103 S. Ct. 927, 941 (1983). Based on

---

[14]Defendant's Reply, Docket Entry No. 33, pp. 4, 8, 10.

this policy, the Court stated that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Id.

The Court recently stated that the "policy favoring arbitration" "'is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts.'" Morgan v. Sundance, Inc., 142 S. Ct. 1708, 1713 (2022) (quoting Cone Memorial Hospital, 103 S. Ct. at 941 and Granite Rock Co. v. International Brotherhood of Teamsters, 130 S. Ct. 2847, 2859 (2010)). "Or in another formulation: The policy is to make 'arbitration agreements as enforceable as other contracts, but not more so.'" Id. (quoting Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 87 S. Ct. 1801, 1806 n.12 (1967)). "[A] court may not devise novel rules to favor arbitration over litigation." Id. (citing Dean Witter Reynolds, Inc. v. Byrd, 105 S. Ct. 1238, 1241-43 (1985)). "The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." Id. at 1713-14 (citing National Foundation for Cancer Research v. A.G. Edwards & Sons, Inc., 821 F.2d 772, 774 (D.C. Cir. 1987)). Morgan involved (and rejected) the crafting of "special, arbitration-preferring procedural rules." Id. at 1713.

Courts apply a two-step inquiry when ruling on a motion to compel arbitration. Edwards v. Doordash, Inc., 888 F.3d 738, 743 (5th Cir. 2018) (citing Klein v. Nabors Drilling USA L.P., 710 F.3d 234, 236 (5th Cir. 2013)). "First, the court asks whether there is a valid agreement to arbitrate and, second, whether the current dispute falls within the scope of a valid agreement." Id. Bustos does not challenge the MUY Agreement's validity but disputes Defendant's arguments about its assignment and scope.

In step two of the analysis the court asks whether "the dispute in question fall[s] within the scope of that arbitration agreement." Klein, 710 F.3d at 236. "When deciding whether the parties agreed to arbitrate the dispute in question, courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." Polyflow, L.L.C. v. Specialty RTP, L.L.C., 993 F.3d 295, 302-03 (5th Cir. 2021) (internal quotation marks omitted).

### III. Analysis

Defendant seeks to compel arbitration of Bustos's claim based on the MUY Agreement. Bustos argues that MUY's arbitration rights were not assignable, that they were not assigned, and that they do not extend to claims arising out of employment with Defendant.

**A. Whether MUY's Arbitration Rights Were Assignable**

Defendant argues that MUY's arbitration rights were assignable.[15] "Courts addressing whether a non-signatory can

---

[15] Id. at 8.

enforce an arbitration agreement are guided by traditional principles of state law . . ." Halliburton Energy Services, Inc. v. Ironshore Specialty Insurance Co., 921 F.3d 522, 531 (5th Cir. 2019) (internal quotation marks omitted). Under Texas law, "[a]s a general rule, all contracts are assignable." Crim Truck & Tractor Co. v. Navistar International Transportation Corp., 823 S.W.2d 591, 596 (Tex. 1992). But "[a]s with any other contract term, parties to a contract can agree [that] their rights in a particular agreement are not assignable." Pagosa Oil and Gas, L.L.C. v. Marrs and Smith Partnership, 323 S.W.3d 203, 211 (Tex. App.–El Paso 2010); see also National Union Fire Insurance Co. of Pittsburgh, PA v. Puget Plastics Corp., 649 F. Supp. 2d 613, 623 (S.D. Tex. 2009).

Bustos argues that the MUY arbitration agreement restricted MUY's ability to transfer its rights under the agreement.[16] She states:

> [T]he Arbitration Agreement limited the parties bound to only MUY and "their *current or former* officers, directors, or managers." Importantly, that clause also does not include *future* officers, directors, or managers, signaling that the plain language of the Agreement did not include future assigns.[17]

But the reference to current or former officers appears in the MUY Agreement's description of covered claim, not in a description of the parties bound:

---

[16]Plaintiffs' Response, Docket Entry No. 31, pp. 7-8.

[17]Id. at 7 [emphasis in original].

> [The parties agree to use arbitration for compensation claims] . . . including any <u>claims</u> now in existence or that may exist in the future (a) <u>that I may have against</u> MUY, its affiliates, and/or <u>their current or former officers, directors or managers</u> or (b) that MUY and/or its affiliates may have against me.[18]

The phrase "current of former officer, directors or managers" describes the scope of covered claims—not which parties may enforce the agreement. Moreover, the purported omission is future officers, directors, and managers, which are not at issue here. This language does not restrict MUY's ability to assign its arbitration rights. Because there is no restriction, MUY was able to assign its rights.

### B. Whether MUY Assigned Its Arbitration Rights to Defendant

Bustos argues that even if MUY's arbitration rights were assignable, Defendant has not shown that they were assigned.[19] Defendant cites three pieces of evidence in response. First, Defendant cites Bly's statement that Defendant "entered into a transaction to purchase all the assets and liabilities of predecessor company MUY."[20] Second, Defendant cites Bly's statement that it "assumed possession of the former MUY employee files, including any arbitration agreements those employees had with the

---

[18]The MUY Agreement, Exhibit D to Defendant's Motion to Compel, Docket Entry No. 30-4, p. 1.

[19]Plaintiffs' Response, Docket Entry No. 31, pp. 9-10.

[20]Bly Decl., Exhibit C to Defendant's Reply, Docket Entry No. 33-1, p. 19 ¶ 3.

predecessor company MUY."[21] Third, Defendant cites documents with its own affiliated entity for administrative services in transferring former MUY employees.[22]

Bustos argues that Bly's Declaration is conclusory and that Defendant should be required to produce its agreement purchasing MUY's assets or excerpts of the agreement showing what was purchased. "Texas law [] requires an alleged assignee of a contract to come forward with evidence of the assignment." In re DePugh, 409 B.R. 125, 139 (Bankr. S.D. Tex. 2009); see also Mohamed v. Auto Nation USA Corp., 89 S.W.3d 830, 836 (Tex. App.—Houston [1st Dist.] 2002) ("[A]rbitration is a creature of contract: when an entity seeks to compel arbitration, it must first establish its right to that contract remedy."). In Mohamed a former employee sued the successor entity of his former employer. 89 S.W.3d at 833. The defendant sought to compel arbitration, citing an arbitration agreement signed by the plaintiff with the former employer. Id. The trial court granted the motion. Id. On appeal, the court held that the trial court had abused its discretion in granting the motion because the defendant, a non-signatory to the arbitration agreement, had offered no admissible evidence of its assignment. Id. at 836, 838.[23]

---

[21]Id. at 20 ¶ 5.

[22]UKG Order, Exhibit A to Defendant's Reply, Docket Entry No. 33-1, p. 2; Consulting Services Work Order Agreement, Exhibit B to Defendant's Reply, Docket Entry No. 33-1, p. 14.

[23]In re DePugh involved a creditor who filed claims in a bankruptcy proceeding. 409 B.R. at 130. However, the debtor
(continued...)

Defendant argues that its evidence is sufficient, relying on Marenco v. DirecTV LLC, 233 Cal.App.4th 1409 (Cal. Ct. App. 2015). In Marenco a defendant-employer sought to compel arbitration of its plaintiff-employee's claims. Id. at 1412. The defendant cited an arbitration agreement that the plaintiff had signed with his former employer, which was later purchased by the defendant. Id. at 1412-13. To prove assignment, the court relied on the declaration of the defendant's "assistant secretary," who "attested that during the acquisition of [the predecessor], [the defendant] had assumed all of [the predecessor]'s assets, debts, rights, responsibilities, liabilities and obligations, including all the rights and obligations arising from [the predecessor]'s employee relationships." Id. at 1414. The trial court compelled arbitration. Id. at 1412. On appeal, the court affirmed, rejecting the argument that the defendant's evidence of assignment was insufficient. Id. at 1420 ("The evidence is undisputed that [the defendant] acquired all of [the predecessor]'s assets, employees, rights, and liabilities.").

The court is not persuaded that Defendant has met its burden. Defendant seeks to equate Bly's Declaration with the one relied on

---

[23](...continued)
challenged the existence of the debts and their assignment to the creditor. Id. at 131. The court stated that these were questions of Texas contract law, which "requires an alleged assignee of a contract to come forward with evidence of the assignment." Id. at 139. The court held that the creditor's only purported evidence of the debts and assignment — conclusory bankruptcy claim forms without supporting documentation — were not evidence, and the court disallowed the claims. Id. at 139, 144.

in Marenco.  But where the Marenco declaration stated that the purchase included the predecessor's "assets, debts, rights, responsibilities, liabilities and obligations," Bly states that Defendant acquired all of MUY's "assets and liabilities."[24]  And where the Marenco declaration specified that its assumption "includ[ed] all the rights and obligations arising from the [the predecessor]'s employee relationships," Bly states merely that Defendant "assumed possession of the former MUY employee files."[25]

The court does not doubt the veracity of Bly's statements, but they are confusingly vague.  Defendant's physical possession of Bustos's employment file is of marginal relevance, if any.  On the question of assignment, Defendant's evidence essentially leaves the court to guess whether "assets and liabilities" refers to MUY's balance sheet or encompasses MUY's contractual rights and obligations to its employees.  Defendant could have attached excerpts from its agreements to purchase MUY or at least a declaration that Defendant assumed MUY's contractual rights and obligations to its employees.  Defendant offers no explanation for the unavailability of this evidence.  The evidence presented does

---

[24]Bly Decl., Exhibit C to Defendant's Reply, Docket Entry No. 33-1, p. 19 ¶ 3.

[25]Id. at 20 ¶ 5 (emphasis added).  In fact, Defendant's choice to enter new employment relationships with MUY employees arguably indicates that it did not assume MUY's employment rights and obligations:  "[Defendant] offered employment to, and retained, essentially all of the previous MUY employees." Id. at 19 ¶ 4.  If Defendant had assumed MUY's rights and obligations under its employment contracts, there would be no need to "offer[] employment" to MUY's employees.

not show that MUY assigned Defendant its rights under the MUY Agreement.

## C.  The Scope of the Agreement

Bustos argues that even if MUY had transferred its arbitration rights to Defendant, those rights only cover claims arising out of her employment with MUY.[26] She argues that the Agreement's text does not extend to claims arising during employment with other companies, including Defendant. Defendant responds that the MUY Agreement's text extends to claims arising during Bustos's employment with Defendant.[27] Alternatively, Defendant argues that the court should infer an implicit agreement to arbitrate with Bustos because it hired her to a substantively identical job, citing Marenco.[28]

Even if a non-signatory can enforce an arbitration agreement, this "does not preclude a party from making the quite different argument that its claims do not fall within the scope of the arbitration clause." American Bankers Insurance Group, Inc. v. Long, 453 F.3d 623, 630 (4th Cir. 2006). If an arbitration agreement only covers disputes between the contracting parties, assignment does not broaden the scope of the agreement to include

---

[26] Plaintiffs' Response, Docket Entry No. 31, p. 11.

[27] Defendant's Reply, Docket Entry No. 33, pp. 10-11.

[28] Id. at 8. Defendant does not group its discussion of Marenco with its briefing about the MUY's Agreement's scope, but the court addresses its relevance to this question.

new claims arising against the assignee. See Hatch v. Optum Services, Inc., Case No. 4:21-CV-1097-LPR, 2022 WL 6757963, at *9 (E.D. Ark. Oct. 11, 2022) (even if non-signatory could enforce arbitration agreement, its scope was limited to disputes between the agreement's named parties).

The MUY Agreement describes the scope of claims subject to arbitration:

> any disputes or claims involving pay/wages, overtime, or other form of compensations, arising under the Fair Labor Standard Act or any similar state or federal laws concerns [sic] wages, pay, overtime, or other compensation, including any claims now in existence or that may exist in the future (a) that I may have against MUY, its affiliates, and/or their current or former officers, directors or managers or (b) that MUY and/or its affiliates may have against me.[29]

The language specifically lists parties against which compensation claims must be arbitrated, and Defendant is not included. The MUY Agreement gives no indication that Bustos agreed to arbitrate claims arising out of future employment relationships with successor companies.[30] The court concludes that the MUY Agreement only applies to claims that arose in connection with Bustos's employment with MUY.

---

[29]MUY Agreement, Exhibit D to Defendant's Motion to Compel, Docket Entry No. 30-4, p. 1.

[30]The MUY Agreement's symmetry also causes problems for Defendant's reading. If the court read claims "against MUY" to mean claims "against MUY or its successors," then claims that "MUY [] may have against me" would mean claims that "MUY or its successors may have against me." Defendant's reading would imply that MUY and Bustos contracted to require Bustos's future employer to arbitrate its own future claims against Bustos.

Defendant also argues that Bustos implicitly agreed to arbitrate disputes arising from her employment with Defendant by accepting employment in the same role: "Bustos continued her employment after [Defendant] acquired MUY, and, therefore, implicitly accepted [Defendant]'s decision to maintain the existing terms of her employment, including the Arbitration Agreement."[31] The court in Marenco accepted a similar argument. The court stated that "there is no doubt that the agreement formed one of the terms of [the plaintiff's] employment." Marenco, 233 Cal. App. 4th at 1419. The court inferred that "the [predecessor's] employees who continued working after the merger implicitly accepted [the defendant]'s decision to maintain their existing terms of employment, including the arbitration agreement." Id. at 1420. Because the defendant in Marenco acquired the predecessor's employment relationships as part of the merger, the terms of those relationships would have still been in effect after the merger. See id. at 1418 (The defendant assumed "all of the rights and obligations arising from [the predecessor's] employment relationships."). The court reads Marenco to mean that an employment agreement assumed as part of a merger maintains its terms absent evidence to the contrary.

By contrast, Defendant purchased MUY's assets and liabilities and entered its own new employment relationship with Bustos. The court does not read Marenco to mean that a new employment agreement

---

[31]Defendant's Reply, Docket Entry No. 33, p. 8.

implicitly imports terms from a predecessor's agreement absent evidence to the contrary. To the extent Defendant argues for this extension of Marenco, the court is not persuaded. The fact that an employee of a predecessor company is offered employment by its successor is not enough to discern the terms of that relationship. Forming a new employment relationship, like any other contract, requires an offer and acceptance. Levetz v. Sutton, 404 S.W.3d 798, 803 (Tex. App.—Dallas 2013). Defendant, as the party seeking to prove a term of that agreement, could have offered evidence about the language of the offer and acceptance. The burden should not be placed on Bustos to disprove a contract term that has not been proven by Defendant. The court concludes that the minimal evidence presented by Defendant does not show an implied agreement to arbitrate claims arising out of Bustos's employment with Defendant.

The court concludes that the MUY Agreement does not extend to Bustos's employment with Defendant. Bustos's claim is solely based on her employment with Defendant — not her employment with MUY. Therefore, even if the court found that the MUY Agreement was assigned, its scope does not cover Bustos's claim. Nor does the evidence show an implied agreement to extend the MUY Agreement to her employment with Defendant.

### D. Class/Collection Action or Arbitration

The arbitration agreements signed by Garza and Gurule require individual arbitration, and they do not dispute the validity of this term.

## IV. Conclusion and Order

For the reasons explained above, Defendant Ayvaz Pizza, LLC's Motion to Compel Arbitration and Dismiss Plaintiffs' Amended Complaint (Docket Entry No. 30) is **GRANTED** as to Garza and Gurule and **DENIED** as to Bustos. Garza and Gurule must submit their claims to individual arbitration, and their claims are **STAYED** pending arbitration. Bustos may pursue her claim in this court.

**SIGNED** at Houston, Texas, on this 5th day of October, 2023.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE